The Honorable Stanley Russ State Senator P.O. Box 787 Conway, Arkansas 72032
Dear Senator Russ:
This is in response to your request for an opinion on two questions relating to towing services. Specifically, your two questions are as follows:
 1. Are cities in Arkansas by law required to solicit bids for towing services?
 2. If a motorist is charged by an arresting officer for violating Arkansas Code 5-65-101 (The Omnibus DWI act) and his motor vehicle must be towed, does the motorist have legal authority to designate who shall tow his motor vehicle?
You have not indicated, with reference to your first question, under what circumstances a city would be paying a towing firm to tow vehicles for the city. It seems clear from A.C.A. § 27-50-1204, at least with respect to the towing of all "unattended" or "abandoned vehicles," that the owner of the vehicle, or the person who left the vehicle unattended or abandoned, is ultimately responsible for all towing costs. In any event, assuming that a city seeks to in some way lawfully engage towing services for the city, and use city funds to pay for these services, it is my opinion that the necessity for the solicitation of bids will depend upon the classification of the city and/or its form of government.
Several different Arkansas statutes govern the requirements for competitive bidding by municipalities. In cities of the first class with the mayor-council form of government, the applicable statute is A.C.A. §14-58-303 (Supp. 1995). This statute, which was recently amended in the 1995 regular session (see Act 812 of 1995), provides that in cases where the amount of the expenditure exceeds ten thousand dollars, the mayor shall invite competitive bidding by advertisement in a local newspaper. The mayor has the power to award the bid to the lowest responsible bidder, or he may reject all bids. The city council may waive the requirement of competitive bidding in exceptional situations where bidding would not be feasible or practical by enacting an ordinance to this effect. The city council has the authority to provide by ordinance the procedure for making purchases or expenditures less than ten thousand dollars.
It is therefore my opinion that if your question refers to a city of the first class with the mayor-council form of government and the expenditure for towing services is expected to be more than ten thousand dollars, the city must invite competitive bidding for the services[1] (unless, of course, the city council enacts an ordinance stating that bidding would not be feasible or practical.)
In cities with the city manager form of government, the relevant statute is A.C.A. § 14-47-138, which requires the solicitation of competitive bids where the anticipated cost of the project exceeds the maximum amount established by the board of directors under the authority of A.C.A. §14-47-120. The contract shall only be consummated on a bid approved by the city manager and by the board. Again, however, the city board can by ordinance waive the requirement of competitive bidding in exceptional situations where bidding is not feasible. In my opinion bidding is required in such cities for towing services where the amount is question exceeds the amount set by the board, unless the board has enacted an ordinance stating that bidding is not feasible.
In cities with the city administrator form of government the relevant statute is A.C.A. § 14-48-129, and its provisions are identical to the requirements for cities with the city manager form of government set out above. My conclusions with regard to these cities are thus also identical to the conclusions reached above with regard to cities with the city manger from of government.
In response to your second question, regarding the right of a motorist arrested for DWI to select the towing firm who will tow his vehicle, it appears that the answer may depend upon whether the vehicle is inoperative or disabled. In most DWI cases, where the vehicle is not disabled or inoperative, the motorist, in my opinion, will not necessarily have the legal authority to designate who shall tow his vehicle. In this regard, A.C.A. § 27-50-1207 (Supp. 1995) provides that:
 (a)(1) No law enforcement agency shall adopt a vehicle removal policy in conflict with this subchapter.
 (2) Any vehicle removal policy shall provide that owner preference, as defined by this subchapter, shall be offered to the owner or person in charge of any disabled or inoperative vehicle, except in those instances where an emergency exists or the immediate clearing of a public thoroughfare mandates an expedited towing service.
 (b) All law enforcement officers shall comply with policies prescribed by his or her agency as to the removal of any unattended or abandoned
vehicle, as defined by this subchapter.
 (c) No law enforcement officer shall suggest or recommend any particular towing-storage firm to the owner or person in charge of any disabled or inoperative vehicle, except in strict compliance with his or her agency's vehicle removal policy.
 (d) Upon request, any law enforcement officer, or his or her agency, who orders a removal pursuant to this subchapter shall provide to the owner or person in charge of the removed vehicle the name, location, and telephone number of the towing-storage firm requested to remove and store the vehicle. [Emphasis added.]
It appears that the vehicle of a person who is apprehended by police and arrested for DWI would be an "unattended" vehicle under the definition set out at A.C.A. § 27-50-1202(1)(D), which includes any "vehicle left on public property without the consent of an authority in charge of such property or on or near a public way without some person, gratuitous bailee, or bailee for hire in possession of such vehicle, and . . . [w]hich vehicle was operated to a place of apprehension by law enforcement under police power, the operator thereof removed from the vehicle and taken into police custody." So under ordinary circumstances, the "owner preference"[2] provision set out above would not apply to a persons arrested for DWI. Such "owner preference" appears to only be applicable in the case of disabled or inoperative vehicles. If the vehicle of the motorist arrested for DWI is not disabled or inoperative, he is not entitled to "owner's preference" in selecting a towing firm. The statutes provide with regard to "unattended vehicles" that the law enforcement officers shall comply with policies prescribed by his or her agency. There is no state law requirement of owner preference as to such vehicles.
Of course, if the vehicle of the motorist arrested for DWI has also during the course of his apprehension become disabled or inoperative, then an argument can be made that it should be treated as such, rather than as an "unattended" vehicle under the subchapter, and thus owner preference would apply. The terms "disabled" or "inoperative" are not defined by the relevant subchapter, however, and thus perhaps legislative clarification is indicated on this point.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] "Towing services," in my opinion, do not fall within the type of "professional services" described in A.C.A. § 19-11-801 (Supp. 1995), upon which competitive bidding is prohibited. Nor, in my opinion, may a city enact an ordinance defining towing services as a "professional service" under that subchapter.
[2] "Owner preference" is defined at A.C.A. § 27-50-1202(11) as "the right of an owner or person in charge of any disabled or inoperative
vehicle to request some responsible and reasonable person, gratuitous bailee, or bailee for hire of his or her choosing to take charge and care of said vehicle." [Emphasis added.]